# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-143V
Filed: July 18, 2025

|  |  |
|---|---|
| VALERIA HERNANDEZ, as the legal representative of her minor daughter, S.H., <br><br> Petitioner, <br><br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br> Respondent. | Special Master Horner |

*Curtis R. Webb*, Attorney at Law, Monmouth, OR, for petitioner.
*Alexa Roggenkamp*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On January 30, 2017, petitioner filed a petition on behalf of her minor daughter, S.H., under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10, *et seq.* (2012).[2] (ECF No. 1.) Petitioner alleged that S.H. suffered seizures leading to epilepsy as a result of the Pediarix (consisting of diphtheria-tetanus-acellular pertussis ("DTaP"); hepatitis B; and polio vaccines), haemophilus influenzae type B ("HIB"), pneumococcal conjugate ("Prevnar 13"), and rotavirus vaccinations that S.H. received on May 22, 2015. (*Id.*) On December 15, 2023, the undersigned issued a decision concluding that petitioner was not entitled to compensation for S.H.'s injuries. (ECF No. 88.)

On July 15, 2024, petitioner filed the instant motion for an award of final attorneys' fees and costs. (ECF No. 92.) Petitioner requests a total of $167,930.00 in

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] Within this decision, all citation to § 300aa will be the relevant sections of the Vaccine Act at 42 U.S.C. § 300aa-10-34.

attorneys' fees and costs, including $131,941.55 in attorneys' fees and $35,988.45 in costs. (*Id.* at 2-3.) Of those costs, $34,600.00 represents expert witness fees for the services of neurologist, Marcel Kinsbourne, M.D., despite the fact that Dr. Kinsbourne passed away on April 21, 2024, prior to providing petitioner's counsel with his billing records for the services he provided in this matter. (*Id.* at 2, 11; ECF No. 92-4, ¶¶ 3-4.)

On July 23, 2024, respondent filed a response to petitioner's motion. (ECF No. 93.) Respondent argues that "[t]he Vaccine Act does not require respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." (*Id.* at 1.) He defers to the Court to determine whether the statutory requirements for an award of attorneys' fees and costs have been satisfied in this case. (*Id.* at 2.) However, respondent alleges that petitioner's counsel has failed to exercise appropriate billing judgment and urges the Court "to apply additional scrutiny to the instant request for reimbursement of fees and costs." (*Id.* at 6.) Specifically, respondent takes issue with the way petitioner's counsel estimated the total number of hours Dr. Kinsbourne spent on this case given the lack of billing records. (*Id.*)

### I. Attorneys' Fees

The Vaccine Act permits an award of reasonable attorneys' fees and costs, § 300aa-15(e), and the Federal Circuit has approved the lodestar approach to determine what constitutes a reasonable award. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993); *see also Hines ex rel. Sevier v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991) ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs.").

Special masters need not engage in a line-by-line analysis of petitioners' fee application. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011). Instead, they may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 486 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests[,] . . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton*, 3 F.3d at 1521.

Special masters can reduce a fee request *sua sponte*, without providing petitioners notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). However, "[t]he failure of respondent to identify with particularity any objection to a request for attorneys' fees and costs may be taken into consideration by the special master in the decision." Vaccine Rule 13(a)(3).

**A. Hourly Rates**

Review of the billing records shows that petitioner's counsel, Mr. Curtis Webb, billed at a rate of $407.50 per hour for work completed in 2016, $424 per hour for work completed in 2017, $440 per hour for work completed in 2018 and 2019, $458.50 per hour for work completed in 2020, $482 per hour for work completed in 2021, $497.50 per hour for work completed in 2022, $524 per hour for work completed in 2023, and $553.50 per hour for work completed in 2024.  (ECF No. 92, p. 2.)  Mr. Webb's requested hourly rates are reasonable and consistent with prior awards.  *E.g., Phelan v. Sec'y of Health & Human Servs.*, No. 18-1366V, 2025 WL 1453777, at *2 (Fed. Cl. Spec. Mstr. Apr. 30, 2025) (awarding Mr. Webb's requested rates of $440 per hour for work completed in 2018 and 2019, $458.50 per hour for work completed in 2020, $482 per hour for work completed in 2021, $497.50 per hour for work completed in 2022, $524 per hour for work completed in 2023, and $553.50 for work completed in 2024); *Anklam v. Sec'y of Health & Human Servs.*, No. 17-2061V, 2020 WL 4049310, at *2-3 (Fed. Cl. Spec. Mstr. June 25, 2020) (awarding Mr. Webb's requested rates of $424 per hour for work completed in 2017, $440 per hour for work completed in 2018 and 2019, and $458.50 for work completed in 2020).

Additionally, for work completed by Mr. Webb's paralegal, petitioner requests the following rates:  $100 per hour for work completed in 2017 and 2018, $145 per hour for work completed in 2020, $155 per hour for work completed in 2021, $165 per hour for work completed in 2022, and $183.50 per hour for work completed in 2024.  The requested rates for 2017 through 2022 are reasonable and consistent with what Mr. Webb's paralegal has been awarded in prior decisions.  *E.g., Sharpe v. Sec'y of Health & Human Servs.*, No. 14-065V, 2021 WL 2917247, at *3 (Fed. Cl. Spec. Mstr. June 10, 2021) (awarding Mr. Webb's paralegal a rate of $100 per hour for work completed in 2017 and 2018, $135 per hour for work completed in 2019, $145 per hour for work completed in 2020, and $155 per hour for work completed in 2021); *Tracy v. Sec'y of Health & Human Servs.*, No. 16-213V, 2022 WL 17821107, at *5-6 (Fed. Cl. Spec. Mstr. Nov. 16, 2022) (awarding Mr. Webb's paralegal a rate of $155 per hour for work completed in 2021 and $165 per hour for work completed in 2022).  With respect to the requested rate for 2024, petitioner argues that $183.50 is the median of the range of appropriate hourly rates for paralegals in 2024 as provided by the Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule.[3]  Considering the qualifications and experience of Mr. Webb's paralegal as outlined in the instant motion, I find the requested rate of $183.50 per hour for work completed in 2024 to be reasonable.  Accordingly, no reduction in the requested rates for Mr. Webb and his paralegal are warranted.

---

[3] The Fee Schedule for 2024 can be accessed at https://www.uscfc.uscourts.gov/osm-attorneys-forumhourly-rate-fee-schedules.

### B. Reduction in Hours Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include hours that are "excessive, redundant, or otherwise unnecessary" in their fee applications. *Saxton*, 3 F.3d at 1521. In reducing an award of fees, the essential goal is to achieve "rough justice." *Florence v. Sec'y of Health & Human Servs.*, No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016). Therefore, "trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allotting an attorney's time." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

After review of the submitted billing records, a reduction in Mr. Webb's fees is necessary for several specific reasons. First, Mr. Webb and his paralegal both billed for administrative tasks, such as filing documents, preparing exhibits for filing, and scanning and organizing medical records.[4] Administrative tasks are non-compensable in the Vaccine Program, and other special masters have reduced Mr. Webb's fee award in prior decisions for billing for such tasks. *E.g.*, *Phelan*, 2025 WL 1453777, at *3 (reducing Mr. Webb's fee award, in part, due to billing entries for clerical tasks, including organizing medical records and preparing exhibits for filing); *see also Paul v. Sec'y of Health & Human Servs.*, No. 19-1221V, 2023 WL 1956423, at *3 (Fed. Cl. Spec. Mstr. Feb. 13, 2023) ("Clerical and secretarial tasks should not be billed at all, regardless of who performs them."). Second, Mr. Webb and his paralegal engaged in unacceptable block billing that hinders review of their billing. *See, e.g., Valdes v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 415, 424 (2009) (explaining that "[s]everal tasks lumped together within one time entry frustrates the court's ability to assess the reasonableness of the request" (quoting *Broekelschen v. Sec'y of Health & Human Servs.*, No. 07-137V, 2008 WL 5456319, at *4 (Fed. Cl. Spec. Mstr. Dec. 17, 2008))). Other special masters have cautioned Mr. Webb against this practice and reduced his fee award accordingly. *E.g.*, *Rothstein*, 2019 WL 4013417, at *5-6; *Forrest v. Sec'y of Health & Human Servs.*, No. 14-1046V, 2019 WL 5704792, at *2 (Fed. Cl. Spec. Mstr. Oct. 2, 2019).

Additionally, the undersigned finds that the number of hours Mr. Webb and his paralegal billed for specific tasks were simply excessive, a practice that has resulted in reduced fee awards for Mr. Webb in prior decisions.[5] *E.g.*, *Phelan*, 2025 WL 1453777,

---

[4] For example, a non-exhaustive list of billing entries by Mr. Webb for administrative tasks includes: "File petition" on January 30, 2017; "Filed Motion for Extension of Time to File Expert Report" on December 30, 2021; and "Filed Dr. Kinsbourne's report and references" on February 28, 2022. (ECF No. 92-1, pp.1-17.) Additionally, a non-exhaustive list of billing entries by the paralegal for administrative tasks includes: "Organized medical records" on January 25 and 26, 2017; "Finished organizing medical records; scanned to computer; typed heading pages; prepared PDFs for filing" on January 30, 2017; "Prepared Dr. Kinsbourne's references for filing: Prepared heading pages, inserted headings into PDF's; added footers/page numbers" on October 19, 2017; "Filed Dr. Kinsbourne's references" on October 20, 2017; "Prepared Exhibits for filing (References for Dr. Kinsbourne's report)" on February 22, 2021; and "Filed Exhibits 29-44 (references for Dr. Kinsbourne's report)" on February 25, 2021. (*Id.*)

[5] For example, Mr. Webb billed a total of 12.8 hours for tasks relating to the preparation of the parties' prehearing joint status report. (ECF No. 92-1, p.12.) However, the joint status report filed by the parties is two pages long, not including signature blocks. (ECF No. 77.) Accordingly, the undersigned finds the

4

at *2-3 (finding that the amount of time billed by Mr. Webb for tasks such as brief writing and corresponding with the expert to be excessive and unreasonable); *Forrest*, 2019 WL 5704792, at *2 n.4 (finding that the amount of time Mr. Webb and his paralegal billed for certain tasks to be excessive in light of the work product that resulted, including the amount of time spent preparing the motion for attorneys' fees and costs at issue).

Considering all of the above, I find that a 10% reduction to the requested attorneys' fees is reasonable and appropriate. This results in a reduced attorneys' fees award of $118,747.39.

## II. Attorney Costs

Petitioner requests an award of $35,988.45 for costs incurred by counsel, representing $34,600.00 in expert fees and $1,388.45 in expenses for obtaining medical records, purchasing copies of articles of medical literature, the Court's filing fee, purchasing a copy of entitlement hearing transcript, and FedEx costs. (ECF No. 92, pp. 2-3; ECF No. 92-2, pp. 1-14.)

### A. Expert Fees

Expert work in this program is also assessed using the lodestar method. *Avera*, 515 F.3d at 1347 (applying the lodestar approach to the Vaccine Act); *Chevalier v. Sec'y of Health & Human Servs.*, No. 15-001V, 2017 WL 490426, at *2-3 (Fed. Cl. Spec. Mstr. Jan. 11, 2017) (citing *Avera* and applying the lodestar calculation to both attorneys' fees and expert costs). Generally, expert hourly rates are based on a number of factors, many of which touch broadly on qualifications and on the market for the relevant expert services, but which also include "the nature, quality, and complexity of the information provided" by the expert, as well as "any other factor likely to be of assistance to the court in balancing the interests" at stake. *Aycock v. Sec'y of Health & Human Servs.*, No. 19-235, 2023 WL 8869423, at *7 (Fed. Cl. Spec. Mstr. Nov. 8, 2023) (citing *McClain v. Owens-Corning Fiberglass Corp.*, No. 89 C 6226, 1996 WL 650524, at *3 (N.D. Ill. Nov. 7, 1996)); *see also Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997).

In this case, Dr. Kinsbourne provided four expert reports and testified at the entitlement hearing. (ECF Nos. 13, 25, 46, 65, 86; Exs. 7, 24, 28, 45.) Petitioner requests reimbursement of expert fees for Dr. Kinsbourne's services at a rate of $500 per hour. (ECF No. 92, p. 2.) The requested hourly rate is reasonable and consistent with what Dr. Kinsbourne has been awarded in prior decisions. *E.g.*, *Nieves v. Sec'y of Health & Human Servs.*, No. 18-1602V, 2023 WL 7131801, at *4 (Fed. Cl. Spec. Mstr.

---

number of hours billed by Mr. Webb for tasks relating to the joint status report to be excessive in light of the work product submitted. Additionally, Mr. Webb and his paralegal billed a combined total of 24.2 hours for tasks relating to preparation of the instant motion for attorneys' fees and costs. (ECF No. 92-1, p. 16.) While the undersigned recognizes that the passing of Dr. Kinsbourne required extra work by petitioner's counsel in preparing the instant motion, I still find the total amount of hours expended to be excessive.

Oct. 2, 2023); *Luch v. Sec'y of Health & Human Servs.*, No. 14-852V, 2022 WL 628717, at *3 (Fed. Cl. Spec. Mstr. Feb. 7, 2022).

However, petitioner represents that Dr. Kinsbourne passed away before he was able to provide an invoice to counsel and that counsel has confirmed his widow is unable to locate any billing records for this case.  (ECF No. 92, p. 11; ECF No. 92-4, ¶¶ 3-4; ECF No. 94, p. 4; ECF No. 97.)  Counsel estimated that Dr. Kinsbourne's fee would be $34,600.00, extrapolating 29.2 hours from counsel's own billing records and further estimating an additional 40 hours of independent work based on counsel's familiarity with the program.  (ECF No. 92-4, ¶¶ 6-13; ECF No. 92-6.)  Respondent initially objected, arguing (1) that counsel's estimate is speculative and (2) that it is unclear to whom the fees would be paid.  (ECF No. 93, pp. 6-7.)  In a follow up order, I directed petitioner to file additional documentation as to how payment of Dr. Kinsbourne's fees would be effectuated.  (ECF No. 96.)  Petitioner then filed an affidavit by Dr. Kinsbourne's widow asserting authority to receive any payment of expert fees.  (ECF No. 97, p. 5.)  She advised that Dr. Kinsbourne's affairs had been arranged such that no estate was needed under Massachusetts law but asserted authority to deposit checks in Dr. Kinsbourne's name into a jointly held account.  (*Id.*)  In response, respondent stated that "[a]lthough respondent is not certain that the letter from Dr. Kinsbourne's widow is sufficient to show that all probate laws of the state of Massachusetts have been satisfied with regard to Dr. Kinsbourne's estate, respondent defers to the Court on this issue."  (ECF No. 98 (internal citation omitted).)

Importantly, neither Dr. Kinsbourne's participation in this case, nor the fact that petitioner necessarily would have incurred fees for his participation, are in dispute. Accordingly, I am willing to treat Dr. Kinsbourne's passing as an extenuating circumstance that warrants some consideration in determining whether petitioner has sufficiently documented Dr. Kinsbourne's time.  However, I agree with respondent that counsel's overall estimate of Dr. Kinsbourne's fee, adding 40 hours of entirely undocumented work based on counsel's personal familiarity with the program, is too speculative and stretches the latitude allowed for Dr. Kinsbourne's passing too far. Indeed, while petitioner's inability to produce billing records may have been compounded by Dr. Kinsbourne's passing, petitioner's counsel's billing records strongly suggest that the lack of any invoice is due primarily to Dr. Kinsbourne's failure to keep contemporaneous billing records in the first instance.  (ECF No. 92-1, p. 16 (entry dated March 28, 2024, stating "prepared detailed memo to Dr. Kinsbourne re: dates that mention his work to assist with preparing his invoice.")  Thus, I find that counsel's more detailed extrapolation from his own billing records is more reasonable as a means of quantifying Dr. Kinsbourne's bill.  Therefore, I find that petitioner should be reimbursed for 29.2 hours of Dr. Kinsbourne's work in this case for a total of $14,600.00.

Although respondent still suggests after petitioner's supplemental submission that it remains uncertain on the existing record whether counsel's plan to effectuate payment to Dr. Kinsbourne's widow fully complies with applicable state law, he no longer objects to an award on that basis and that issue is ultimately beyond the scope of this decision.  This decision addresses only the question of what costs were reasonably incurred in proceeding on this petition, § 300aa-15(e), and does not result in any direct

payment to Dr. Kinsbourne's widow. Instead, it provides for those fees and costs that were reasonably incurred to be paid to counsel's IOLTA account for disbursement. It is counsel's own independent obligation to ensure that any disbursements from his IOLTA account are legally and ethically appropriate. If counsel were to ultimately determine that he is unable to appropriately disburse these funds for their intended purpose, he would still be able to file a motion to amend the judgment due to overpayment. Such a motion would result in a judgment favoring the respondent. *Compton v. Sec'y of Health & Human Servs.*, No. 19-1455V, 2024 WL 1269773 (Fed. Cl. Spec. Mstr. Feb. 27, 2024).

Accordingly, petitioner is awarded expert fees for Dr. Kinsbourne's services in the reduced amount of $14,600.00.

### B. Other Costs

I have reviewed the remainder of the costs requested and find that they are reasonable and sufficiently documented. (*See* ECF No. 92-2, pp. 1-14.) Therefore, I award reimbursement of those costs in full, which total $1,388.45.

## III. Conclusion

**Accordingly, petitioner is awarded attorneys' fees and costs in the total of $134,735.84, to be paid through an ACH deposit to petitioner's counsel's IOLTA account for prompt disbursement.**

The clerk of the court shall enter judgment in accordance herewith.[6]

**IT IS SO ORDERED.**

**s/Daniel Horner**
Daniel Horner
Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.